IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GUARANTEE COMPANY NORTH | ) | |
| AMERICA USA, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 09-0813-WS-M |
| | ) | |
| GADCON, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

ORDER

This matter comes before the Court on plaintiff's application for temporary restraining order contained in Count Three of the Complaint (doc. 1).[1] The application is supported by a memorandum of law (doc. 2). At the Court's directive, plaintiff provided actual notice of the pending temporary restraining order application to defendant via overnight shipment delivered to defendant's principals' current residence address in Kentucky on December 17, 2009. (Doc. 6.) This packet included a copy of the December 16 Order (doc. 3), which specifically ordered defendant to respond to the application for temporary restraining order on or before December 21, 2009. Defendant having failed to respond in a timely manner or otherwise to appear herein,[2]

---

[1]    Rather than embedding a request for emergency injunctive relief in a pleading, a better practice would be to file separate motions for temporary restraining order and preliminary injunction contemporaneously with the Complaint. The disadvantages of proceeding as plaintiff has done here are substantial (*e.g.*, a TRO application buried in a pleading may not be identified and flagged by the Clerk of Court for immediate referral to a District Judge the way a separate motion would be, complaints not infrequently include requests for preliminary injunctive relief amid boilerplate allegations even though plaintiffs have no intention of pursuing them, etc.). Nonetheless, there is nothing *per se* improper about proceeding in this fashion, and the application for TRO is properly before the undersigned.

[2]    The Court notes that Attorney C. Michael Smith has filed a Response (doc. 7) for the sole purpose of stating that he does not represent defendant in this matter. Although counsel spar on certain topics, plaintiff's submissions do not suggest that Attorney Smith actually does represent Gadcon herein. Accordingly, it is clear that Attorney Smith is not counsel of record for defendant herein, and that defendant has not appeared despite actual notice of both the temporary

the application for temporary restraining order is now ripe.

## I.      Background.

The Complaint was brought by plaintiff, Guarantee Company North America USA ("GCNA"),[3] against defendant, Gadcon, Inc. ("Gadcon"), seeking exoneration and specific performance of Gadcon's indemnity and other obligations to GCNA, as surety, pursuant to the parties' General Agreement of Indemnity.  The Complaint alleges that GCNA, acting at Gadcon's request, issued performance and payment bonds in favor of the City of Gulf Shores, Alabama, on a project known as the Gulf Shores Softball Sportsplex (the "Project"). (Complaint, ¶ 4.)  The Complaint further reflects that on February 1, 2007, prior to issuance of the subject bonds, Gadcon executed a General Agreement of Indemnity (the "Agreement") in GCNA's favor that, *inter alia*, obliged Gadcon to indemnify and hold GCNA harmless for expenses or losses that GCNA may incur under the bonds, and conveyed to GCNA certain interests in certain property of Gadcon as collateral.  (*Id.*, ¶ 5 & Exh. A.)

According to the Verified Complaint, GCNA has already paid claims and expenses on the Project in the amount of $102,658.26 pursuant to the bonds it issued on behalf of Gadcon, and also faces the specter of significant future liabilities on those bonds.  (*Id.*, ¶ 6.)  Indeed, the Complaint alleges that GCNA has received additional claims totaling $171,011.66 from labor and material suppliers to the Project, and has been notified by the City of Gulf Shores of a potential performance bond claim involving allegations of improper materials used on the Project.  (*Id.*)  The Complaint states that GCNA requested that Gadcon comply with its indemnification and reimbursement obligations under the Agreement with respect to the current loss reserve, but that Gadcon "has failed to honor this request, and has otherwise refused to perform its obligations as specified in the [Agreement]."  (*Id.*, ¶ 8.)

On the strength of these allegations, GCNA requests immediate injunctive relief in the

restraining order application and the Court-imposed deadline for response.

[3]      In its most recent submission, plaintiff restates its corporate name as "Guarantee Company of North America USA," even though the Complaint identifies the plaintiff's name as "Guarantee Company North America USA."  Unless and until an appropriate amendment to the Complaint is made pursuant to Rule 15, Fed.R.Civ.P., the plaintiff's name of record remains "Guarantee Company North America, USA."

form of a temporary restraining order ("TRO") and preliminary injunction.  In their most stringent form, the requested injunctions would essentially freeze Gadcon's assets, impose a judicial lien on "any and all assets and property of" Gadcon, require Gadcon to perform an immediate detailed accounting of all assets it held at any time in the last 180 days, and so on.  In the alternative, GCNA seeks a TRO that enjoins and restrains Gadcon "from making or attempting to make any transfers or conveyances of assets, and from selling, conveying, mortgaging, encumbering, or in any other substantive manner dealing with any of its assets or property" until such time as GCNA's request for preliminary injunction is adjudicated.  (*Id.*, ¶ 20.)  As noted, Gadcon was given notice of plaintiff's TRO application and that application was stayed for five days to afford Gadcon an opportunity to be heard; however, it failed to avail itself of that opportunity, or even to request additional time to prepare a response.

**II.    Analysis.**

To be eligible for a temporary restraining order or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements:  (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).  Fundamentally, TROs are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller, *Federal Practice & Procedure: Civ.2d* § 2951.

Despite receiving actual notice of the TRO application, Gadcon has not challenged GCNA's ability to satisfy any of the four requisite elements for entry of a TRO.  Moreover, the exhibits submitted by plaintiff, as well as the statements in the Verified Complaint, appear adequate on their face to meet GCNA's burden as to each element.  With regard to substantial likelihood of success on the merits, plaintiff's showing is that (1) Gadcon entered into a General Agreement of Indemnity pursuant to which it, *inter alia*, promised to indemnify GCNA in connection with bonds such as those issued on the Project; (2) GCNA has incurred substantial losses and expenses on the Project's bonds, and faces the prospect of significant further liabilities; and (3) Gadcon failed to perform its indemnification and other obligations to GCNA

upon demand for same.  Given the legal protections granted to sureties under Alabama law and the enforceability of indemnity agreements like the one at issue here, plaintiff plainly has shown a substantial likelihood of success on the merits.  *See, e.g., SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co.*, 931 So.2d 706 (Ala. 2005) ("When a surety satisfies the principal's obligation, it is entitled to reimbursement or restitution from the principal ...."); *Doster v. Continental Cas. Co.*, 105 So.2d 83, 85 (Ala. 1958) ("A surety's right of exoneration is established by our decisions ....").

The same conclusion obtains as to each of the other three Rule 65 elements.  On the subject of irreparable injury, federal courts recognize that "the judicial process can be rendered futile by a defendant's action or refusal to act during the pendency of the suit" and that Rule 65 relief may be warranted in the interim "to preserve the court's power to render a meaningful decision after a trial on the merits."  *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005) (citation omitted).  This is precisely GCNA's point.  Without a TRO to preserve the status quo, Gadcon would potentially remain free to transfer, convey or encumber assets that otherwise could be mined by GCNA to reimburse its surety obligations.  The result of such transfers, conveyances and encumbrances would be that any monetary judgment ultimately obtained by GCNA after a trial on the merits would be hollow given the impossibility of collecting on such judgment from a destitute defendant.  In the absence of any rejoinder by defendant, the Court finds that the irreparable harm element is satisfied.  The third Rule 65 element concerns the balancing of harms.  The only facts before the Court at this time are that, in the absence of a TRO, GCNA might lose the ability to obtain reimbursement for the losses it has incurred and may in the future incur on the Project bonds.  By contrast, there has been no indication that Gadcon will be harmed in any respect if Rule 65 relief is entered against it at this time.[4]  The balance of harms clearly weighs in favor of issuing a TRO.  Fourth and finally, the

---

[4]      While the contemplated restrictions on the use and transfer of Gadcon's assets appear onerous at first blush, the unrebutted information before the Court is that Gadcon "has discontinued business operations in Alabama and Kentucky, and no disruption of any ongoing business activities will result from the issuance of the injunctive relief ...."  (Doc. 6, at 3 n.2.) Based on these factual allegations, any concerns about excessive harm being visited on defendant are attenuated.

Court finds that the public interest favors the effective, meaningful enforcement of indemnity agreements and surety remedies. Sureties would be reluctant to perform valuable services for their principals unless the latter's assets could be preserved pending final disposition of claims for indemnity and/or exoneration under an indemnity agreement or the law of suretyship. Thus, the public interest supports entry of a TRO.

For all of these reasons, and in the absence of any facts or arguments by defendant to rebut plaintiff's showing, the Court finds that entry of a TRO is appropriate. The remaining question concerns the form of that TRO. In Count Three of the Complaint, GCNA offers two distinct proposals. Plaintiff's first requested approach would have the TRO include the following elements: (a) a prohibition on defendant's sale, transfer or other disposition of any property that might be used to satisfy any judgment or specific performance ordered in GCNA's favor; (b) a ban on defendant's removal, destruction or transfer of "all its business records in any form or nature whatsoever"; (c) imposition of a judicial lien with respect to all of Gadcon's assets and property; (d) entry of a directive commanding Gadcon to make a full accounting within 10 days of the nature, extent and location of all of its assets, and itemization of the disposition of any assets that were in its possession at any time in the last 180 days; (e) the marshaling and sequestering of Gadcon's assets to exonerate the surety; and (f) entry of a directive commanding Gadcon to deposit with GCNA sufficient assets to secure GCNA from its anticipated losses. (Complaint, ¶¶ 16, 19.) The second, much more straightforward proposal would have the TRO go no further than to prohibit the sale or transfer of defendant's assets. (*Id.*, ¶ 20.)

The scope of plaintiff's first proposal for a TRO reaches far broader than is reasonably necessary at the TRO stage (or the preliminary injunction stage, for that matter) to preserve the status quo and protect GCNA's legitimate interests in avoiding irreparable injury. Remember that the harm purportedly animating plaintiff's Rule 65 requests is the fear that Gadcon will secrete or dispose of its assets before a final judgment on the merits can be issued, effectively rendering any such judgment meaningless. Most aspects of plaintiff's first TRO proposal extend well beyond safeguards that may be reasonably necessary to protect against this potential for irreparable harm. Among other things, plaintiff's proposal would potentially entangle the Court in the minutiae of defendant's day-to-day affairs, would impose a judicial lien on all of

defendant's property without any legal showing as to the propriety of same, would force the defendant to disgorge the equivalent of extensive post-judgment discovery in a matter of days to facilitate plaintiff's collection efforts even though no judgment or disposition on the merits has been entered, and would effectively shift the risk from plaintiff to defendant by enabling plaintiff to hold defendant's assets for safekeeping pending final disposition of this action.  Plaintiff has failed to show why any of these steps are reasonably necessary to protect its valid interests in advance of a final ruling on the merits, or why a blanket order forbidding the sale and transfer of defendant's assets would not suffice to insulate it from irreparable harm.  Accordingly, the TRO will be confined to the second alternative delineated in the Complaint.  That proposed form of TRO does bear a nexus to the irreparable harm sought to be avoided, and will be adopted.

**III.    Conclusion.**

For all of the foregoing reasons, plaintiff's Application for Temporary Restraining Order (found at Count Three of the Complaint) is **granted in part**, and **denied in part**, as follows:

1.    Pursuant to Rule 65(b), Fed.R.Civ.P., defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are temporarily **enjoined and restrained** from making or attempting to make any transfers or conveyances of defendant's assets, and from selling, conveying, mortgaging, encumbering or in any other substantive manner dealing with any of defendant's assets or property, pending further proceedings on plaintiff's request for preliminary injunctive relief.

2.    Pursuant to Rule 65(c), plaintiff is **ordered** to post a bond in the amount of **$500.00**, by depositing same with the Clerk of Court on or before **December 28, 2009**.

3.    This Order shall be deemed effective upon plaintiff's posting of the bond and will expire at the close of business on **January 6, 2010**, unless extended for good cause shown pursuant to Rule 65(b)(2).

4.    Any party wishing to be heard in opposition to plaintiff's Request for Preliminary Injunction (found at Count Two of the Complaint) must file a brief supported by authorities (along with any affidavits, exhibits, or other evidence it wishes to

submit into the record) by no later than **December 31, 2009**.  Plaintiff will be allowed to file a reply on or before **January 4, 2010**.  If the Court determines that oral argument or an evidentiary hearing is necessary, the parties will be notified and a hearing will be scheduled.  Otherwise, the Request for Preliminary Injunction will be taken under submission after January 4, 2010, and will be ruled on promptly thereafter.[5]

5.      Plaintiff's counsel is **ordered** to serve a copy of this Order on defendant in a manner calculated to alert defendant immediately to same.

DONE and ORDERED this 23rd day of December, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5]      In its discretion, the Court may take these matters under submission without an evidentiary hearing.  The law is clear that a hearing is required on motions for TRO or preliminary injunction only if there are contested issues of fact that require credibility determinations.  *See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003) (observing that an "evidentiary hearing is not always required before the issuance of a preliminary injunction" unless "facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue") (citations omitted); *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (opining that where little dispute exists as to raw facts, and dispute revolves around inferences to be drawn from such facts, it is left to district court's sound discretion to determine whether an evidentiary hearing is necessary by balancing the interests of speed and practicality against those of accuracy and fairness).  At this time, there is no reason to believe that there are any contested issues of fact pertaining to the requested preliminary injunction as to which credibility determinations would be necessary.