IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **GUARANTEE COMPANY NORTH AMERICA USA,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **CIVIL ACTION 09-0813-WS-M** |
| **GADCON, INC.,** | ) ) ) | |
| Defendant. | ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Default Judgment (doc. 17), the Supplement to Plaintiff's Motion for Default Judgment (doc. 19), and the supporting evidentiary submission (doc. 20). Also before the Court is plaintiff's Notice of Filing Supplemental Affidavit of Wendy Drum (doc. 24).[1]

**I.   Relevant Background.**

Plaintiff, Guarantee Company North America USA ("GCNA"), brought this action against defendant, Gadcon, Inc. ("Gadcon"), seeking exoneration and specific performance of indemnity and other obligations Gadcon owed to GCNA, as surety, pursuant to the parties' General Agreement of Indemnity (the "Agreement"). The crux of the Complaint is that GCNA incurred substantial losses and expenses pursuant to performance and payment bonds it issued at Gadcon's request in favor of the City of Gulf Shores, Alabama on a project known as the Gulf Shores Softball Sportsplex (the "Sportsplex"). According to the Complaint, Gadcon failed and

---

[1]   On May 10, 2010, the undersigned entered an Order (doc. 21) indicating that plaintiff's evidentiary submission on damages was inadequate in two respects. First, the May 10 Order noted, "plaintiff requests an award of 'expenses' in the amount of $43,338.79, with no itemization or description of what those expenses are." (Doc. 21, at 1.) Second, that Order continued, "plaintiff requests an award of attorney's fees of $46,976.23," with no elaboration or supporting documentation. (*Id.*) On that basis, the May 10 Order directed plaintiff to supplement its evidentiary submission to correct these omissions. The Supplemental Affidavit of Wendy Drum is plaintiff's response.

refused to perform its indemnification and reimbursement obligations under the Agreement, leaving GCNA to foot the bill for numerous claims made by third parties pursuant to the Sportsplex bonds. Through this action, GCNA seeks to be made whole for these expenditures.

On January 21, 2010, upon application by GCNA, a Clerk's Entry of Default (doc. 16) was entered against Gadcon pursuant to Rule 55(a), Fed.R.Civ.P., for failure to plead or otherwise defend, inasmuch as Gadcon had not appeared in or defended against these proceedings despite actual notice and service of process via certified mail in December 2009. Several weeks later, on February 12, 2010, GCNA followed up by filing a Motion for Default Judgment (doc. 17). Despite notice of both the Clerk's Entry of Default and the Motion for Default Judgment, Gadcon has elected to remain silent, and has failed to undertake any steps to contest entry of default judgment in this action.

In an Order (doc. 18) entered on April 2, 2010, the undersigned determined that entry of default judgment against Gadcon is appropriate, given that entity's failure to appear in or otherwise acknowledge the pendency of this civil action for more than three months after being served. The April 2 Order also examined the sufficiency of the Complaint (the factual allegations of which are deemed admitted by virtue of Gadcon's default) to state a claim, and concluded that GCNA had adequately pleaded a viable cause of action against Gadcon under Alabama law. In particular, the Court stated as follows:

> "[E]ntry of default judgment against Gadcon is appropriate pursuant to Rule 55, given Gadcon's failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint ... to establish its liability to GCNA on the exoneration theory set forth in Count One."

(Doc. 18, at 4.)

Notwithstanding the foregoing, the Court expressed reservations in the April 2 Order as to the propriety of GCNA's request that default judgment be entered in the amount of $500,000. In that regard, the April 2 Order pointed out that "the sum of $500,000 appears to have been selected arbitrarily, inasmuch as there is neither evidence nor allegation that plaintiff's losses under the Sportsplex bonds for which Gadcon has indemnity obligations have reached or will approach such a magnitude." (*Id.* at 5.) The Court also voiced skepticism towards GCNA's suggestion that the default judgment order Gadcon to "deposit" the sum of $500,000 with GCNA, noting that such an arrangement would entrust GCNA "with responsibility for accurately

debiting claims on the bonds from that amount, then returning the remainder to Gadcon at some unspecified future time, with no safeguards to prevent abuses." (*Id.*) The April 2 Order further set forth the Court's view that GCNA's proposed default judgment appeared in all relevant respects to be a judgment for money damages, the existence and amount of which GCNA must prove. *See, e.g., Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) (even in default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters"). On that basis, the Court ordered GCNA to file a supplemental evidentiary submission to establish its money damages against Gadcon so that a properly supported default judgment may be entered. Plaintiff having complied with this directive via its Supplement (doc. 19) and Notice of Filing (doc. 20), the Court now reviews those materials for the purpose of fixing an appropriate damages award for the default judgment.[2]

## II.   Analysis.

### A.   *Plaintiff's Renewed Request for a $500,000 Judgment.*

In its Supplement, GCNA renews its previous contention, albeit in slightly modified form, that default judgment should be entered in its favor in the amount of $500,000.[3] In support of this position, GCNA points to the Agreement's provision authorizing GCNA to require a

---

[2] Significantly, the April 2 Order also indicated that, insofar as GCNA believed that entry of a default judgment requiring Gadcon to deposit $500,000 with GCNA would be proper, even without any showing of actual monetary damages commensurate with that amount, "plaintiff is invited to submit legal authority in support of that proposition in addition to the evidentiary submission." (Doc. 18, at 7 n.6.) GCNA did not avail itself of this opportunity, or provide case law that might remove this action from the general paradigm that a plaintiff must prove money damages before entry of default judgment.

[3] It bears noting that in its original Motion for Default Judgment, GCNA did not request that a $500,000 judgment be entered outright; rather, GCNA asked that this Court order Gadcon to deposit $500,000 with GCNA within 10 days, and posited that if/when defendant failed to comply (as appeared inevitable, given its track record of unresponsiveness), then this Court should enter judgment for GCNA in that amount. (Doc. 17, at 2.) Now plaintiff would apparently have the Court skip the preliminary step of ordering Gadcon to make the deposit, and instead immediately cut to the chase by entering default judgment in the amount of $500,000. Plaintiff's Supplement does not set forth any legal basis for this shift in GCNA's position, just as plaintiff never offered any legal ground why the deposit order would be appropriate in the first instance as a stepping stone to the desired $500,000 judgment.

collateral deposit from Gadcon in any amount GCNA might request in its sole discretion. According to GCNA, because it exercised its right under the Agreement to unilaterally set that collateral deposit figure at $500,000 and Gadcon failed to pay it, GCNA "believes" that "judgment in the amount of $500,000 should properly be entered against the Defendant." (Doc. 19, at 2.)

This argument is unpersuasive for a host of reasons. For starters, assuming for the moment that such a damages theory is viable, GCNA has presented no evidence (and there are no factual allegations in the Complaint) that plaintiff ever notified Gadcon that it was requiring a $500,000 collateral deposit under the Agreement. To be sure, the Complaint generally alleges that Gadcon failed to perform obligations under the Agreement, but there is no allegation and no evidence that GCNA ever invoked the collateral deposit provision to the tune of $500,000 in its dealings with Gadcon. Thus, there is no evidentiary foundation for plaintiff's statement that Gadcon failed to deposit collateral of $500,000 with GCNA because there are no record facts from which the Court could conclude that GCNA demanded that Gadcon make a collateral deposit in that amount.

Further, plaintiff's argument is hampered by its failure to cite the specific portion of the Agreement that it contends grants it an unfettered right in its sole discretion to demand a collateral deposit in any amount. Assuming (as appears likely) that GCNA intends to rely on Paragraph 5 of the Agreement (a copy of which is found at Exhibit A to doc. 1), that paragraph requires Gadcon, upon demand by GCNA, to "deliver over to [GCNA] collateral security acceptable to [GCNA] to cover any contingent losses." (*Id.*, ¶ 5.) But that paragraph does not authorize GCNA to retain such collateral permanently; rather, it specifically provides that GCNA "shall return to [Gadcon] any unused portion of collateral upon termination of the liability of [GCNA] on all BONDS ...." (*Id.*) Here, however, GCNA is requesting entry of a final judgment in the amount of the contemplated collateral deposit, without regard to whether that deposit will be consumed in its entirety in satisfying GCNA's outstanding liabilities on the bonds and without any provision for an accounting or reimbursement of excess deposited funds to Gadcon. Thus, GCNA seeks to transform a contingent, temporary collateral deposit arrangement in the Agreement into a permanent money damages award, without identifying any legal mechanism that may permit the *post hoc* redrafting of the parties' Agreement in that

manner.[4]

Yet another problem with GCNA's theory for seeking a $500,000 award is that plaintiff has offered neither law nor reasoning to remove this case from the ambit of the authorities cited in the April 2 Order concerning the plaintiff's need to prove its damages, even in the default judgment context. It is black-letter law that a court cannot enter default judgment based on mere speculation or guesswork. *See, e.g., Anheuser Busch*, 317 F.3d at 1266 (cautioning against entry of default judgment fixing damages based on "a completely unreasonable or speculative amount of damages with no factual basis").[5] Plaintiff's evidentiary submission reflects that "GCNA has incurred a loss and legal expense which currently totals $185,817.96 by virtue of its issuance of bonds on behalf of Gadcon, Inc." (Doc. 19, ¶ 1.) While GCNA hypothesizes and "expects" that its loss will ultimately reach the half-million dollar figure it seeks in its default judgment motion, based on a recent state-court lawsuit brought against it, no losses of that magnitude have been incurred, much less proven, to this point. The Court has nothing other than GCNA's unvarnished prediction as to additional liabilities it may (or may not) incur in the future. The materials submitted by plaintiff provide no reasonable basis for concluding that GCNA's ultimate losses to Gadcon attributable to issues joined in the Complaint will reach or approach

---

[4] A more theoretical concern with plaintiff's apparent reliance on Paragraph 5 to justify the requested default judgment award is that it would empower a party in GCNA's position to "name its price" and obtain a default judgment in any arbitrary amount selected, on its mere say-so. The potential for abuse in such a scenario militates strongly against awarding GCNA default judgment in the fill-in-the-blank amount of its choice merely because the Agreement authorized it to demand a collateral deposit from Gadcon.

[5] *See also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Anglo-Iberia Underwriting Management Co. v. Lodderhose*, 282 F. Supp.2d 126, 129 (S.D.N.Y. 2003) (in default judgment context, plaintiff's "speculative assertions about future management fees fail to demonstrate damages with reasonable certainty and are thereby unrecoverable"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").

$500,000, and again, plaintiff's documented losses to date are approximately one-third of that sum.

Awarding a default judgment based on speculative, unproven damages hinging on contingencies that have not occurred in other pending litigation would be both improper and imprudent. This is particularly true given plaintiff's frank admission that "[t]he nature and extent of GCNA's liability" on these contingent matters "is disputed and undetermined at this time." (Drum Aff. (doc. 20), Exh. 1, ¶ 4.) Under the circumstances, to award GCNA the requested default judgment based on "disputed and undetermined" liabilities it may incur in other litigation would constitute unreasonable conjecture and create an unacceptable risk of a windfall for plaintiff should those presently indeterminate obligations prove lower than GCNA subjectively anticipates at this time.

### B. *The Amount of Money Damages Proven by Plaintiff.*

Notwithstanding the foregoing, plaintiff has submitted evidence of the amount and character of damages it has incurred by virtue of Gadcon's failure to perform its obligations of indemnity and reimbursement to GCNA in connection with the Sportsplex performance and payment bonds. In particular, GCNA has proffered the Affidavit of Wendy Drum, Esq., the Supplemental Affidavit of Wendy Drum, and various exhibits, including a spreadsheet documenting on an item-by-item basis the claims it has paid on the Sportsplex bonds and an itemized description of legal fees it has incurred and paid. This showing is sufficient to enable the Court to fix damages in many respects. Moreover, plaintiff has not requested a damages hearing; therefore, the damages determination will stand or fall on the strength of GCNA's written evidentiary submission.[6]

---

[6] Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id.* at 1232 n.13. In this case, plaintiff has submitted sufficient evidence, in the form of affidavits and exhibits, to allow a fully formed determination of damages as to each category of damages awarded by this Order. Accordingly, no evidentiary hearing is necessary in this case to fix plaintiff's damages.

Recall that the now-admitted facts in the Complaint underlying GCNA's damages claims include the following: (a) GCNA issued performance and payment bonds at Gadcon's request for the Sportsplex project; (b) Gadcon entered into the Agreement, wherein it promised to indemnify and exonerate GCNA for any losses or expenses of any kind (including attorney's fees) on those bonds; (c) GCNA has received, investigated and paid a series of claims on the Sportsplex bonds, and has incurred expenses in so doing; and (d) Gadcon has refused to indemnify and reimburse GCNA for those losses despite its contractual obligation to do so. (Doc. 1, ¶¶ 4-8.) And the Complaint states a cause of action for indemnity and specific performance of Gadcon's contractual duties, such that GCNA is unquestionably seeking recovery of those losses in this litigation. The critical question for damages purposes, then, is the total value of claims GCNA has paid and expenses GCNA has incurred in connection with the Sportsplex bonds.

To prove its damages, GCNA relies principally on the Drum Affidavit, to which is appended "a ledger containing the status of claims made on the Payment Bond related to the Sportsplex project." (Drum Aff., ¶ 3.) The ledger recites and summarizes the particular claims made on the Sportsplex payment bonds, arranged by payee, and delineates the total claims paid by GCNA as well as the dates of payment for claims under City of Gulf Shores Bond No. BS40042667, as to which Gadcon was the principal. Review of that ledger confirms that, between the dates of February 6, 2009 and April 8, 2010, GCNA paid more than a dozen claims to contractors and vendors in connection with the Sportsplex bonds, in the total amount of **$95,502.94**.[7] That sum is properly awarded to plaintiff in the default judgment in this case, because it represents amounts owed by Gadcon to GCNA pursuant to the Sportsplex bonds, in accordance with Gadcon's indemnification and exoneration obligations to GCNA as specified in the Agreement.[8]

---

[7] The Supplemental Drum Affidavit (doc. 24) reiterates this figure and includes an consolidated Exhibit A with backup documentation in the form of claims drafts to document that GCNA has in fact paid out claims in the total amount of $95,502.94 in performing its obligations under the Sportsplex bonds.

[8] Plaintiff's evidence is that there remain additional outstanding, unresolved claims on the Sportsplex bonds in the amount of $25,207.74. (Drum Aff., ¶ 3.) The Court understands that those claims have not been paid by GCNA to date, and that they may or may not ever be

In addition to the actual claims paid to numerous contractors on the Sportsplex bonds, GCNA seeks to recover its attorney's fees incurred in fulfilling its surety obligations on Gadcon's behalf. Attorney's fees are properly recoverable in this action. After all, by virtue of its default, Gadcon has admitted the well-pleaded allegation in the Complaint that it "promised to indemnify and exonerate GCNA from and against any and all liability for losses or expenses of whatsoever kind or nature, including, but not limited to, interest, court costs and ***attorney's fees***, which GCNA might sustain and incur by reason of having executed any bonds on the defendant's behalf, or by reason of the failure of the defendant to comply with the conditions of the [Agreement]." (Doc. 1, ¶ 5 (emphasis added).) These admitted facts establish that Gadcon agreed to reimburse GCNA for attorney's fees it might incur by reason of (i) its issuance of the Sportsplex bonds on Gadcon's behalf or (ii) Gadcon's failure to perform its obligations under the Agreement. Thus, GCNA's legal fees are recoverable insofar as they relate to contractor claims on the Sportsplex bonds or its efforts in this litigation to force Gadcon to live up to its exoneration and indemnity promises.

Plaintiff's evidence is that it has "incurred and paid legal expenses totaling $46,258.42" in resolving bond claims, defending lawsuits brought by subcontractors and material suppliers, evaluating claims on bonded projects, and pursuing this indemnity action against Gadcon. (Supp. Drum Aff., ¶ 3.) Backup documentation appended to the Supplemental Drum Affidavit includes copies of GCNA's law firm's invoices, itemized time records, and payment drafts, most of which plainly relate to fees incurred by GCNA by reason of its issuance of the Sportsplex bonds or its attempts to hold Gadcon accountable. (*Id.* at Exh. B.) However, scrutiny of that documentation reveals that the proposed attorney's fee figure includes substantial sums that GCNA incurred for matters unrelated to the Gulf Shores Sportsplex bonds or this litigation. By the Court's tally, some $7,323.00 in claimed attorney's fees were for legal services rendered to GCNA pertaining to the City of Fairhope maintenance bond claim, which plaintiff did not

---

paid. Because any future loss that GCNA may incur on those outstanding claims is contingent, hypothetical and speculative at this time, the value of those outstanding claims will not be included in the default judgment award.

properly join in this lawsuit via its Complaint, as set forth in Section II.C., *infra*.[9] The Court will not award attorney's fees for matters outside the boundaries of the claims joined in this action. Accordingly, that portion of the legal expenses claimed by GCNA will be disallowed, leaving a total recoverable attorney's fee amount of **$38,935.42** (or $46,258.42 minus $7,323.00), which will be included in the default judgment entered in this case.[10]

        C.       *The Fairhope Maintenance Bond Claim.*

In addition to GCNA's claims for damages sustained in relation to the Sportsplex bonds, GCNA's Supplement (doc. 19) reflects its desire that the default judgment include other, not-yet-

---

[9] Plaintiff's law firm's invoices do not break out the Gulf Shores Sportsplex issue from the City of Fairhope maintenance bond issue as separate matter numbers with separate billing. In fact, many of the invoices bear the heading "GADCON, Inc. - City of Gulf Shores Sportsplex Addition / City of Fairhope." Nonetheless, the itemized attorney billing records are sufficiently detailed to allow Fairhope-related entries to be identified, flagged and deleted with a reasonable degree of precision. For that reason, the undersigned will not order plaintiff to submit redacted billing statements that exclude all City of Fairhope-related attorney's fees, but will instead rely on its own assessment that $7,323.00 in claimed attorney's fees were incurred in the Fairhope matter, rendering them unrecoverable herein.

[10] One other point bears mentioning. In its damages submission of April 30, 2010, GCNA suggested that the "expenses" and "attorney's fees" categories of damages were distinct, rather than redundant. In particular, GCNA requested an award of $185,817.96. That figure included $138,841.73 in "claims and incurred expenses on the Sportsplex project," which could in turn be broken down into $95,502.94 in paid claims and $43,338.79 in "expenses." (Drum Aff., ¶ 3 & Exh. 1 at 5.) To that $138,841.73 in "claims and incurred expenses," plaintiff proposed to add "attorney's fees in the amount of $46,976.23," yielding the total award of $185,817.96. (Drum Aff., ¶ 3.) The problem was that plaintiff had not documented either the "expenses" of $43,338.79, or the "attorney's fees" in the amount of $46,976.23. So the Court entered an Order (doc. 21) on May 10, 2010 pointing out the discrepancy and requiring GCNA to provide a supplemental evidentiary submission documenting its "expenses" and "attorney's fees." In its supplemental evidentiary submission of May 24, 2010, GCNA addressed both the "paid claims" and "attorney's fees" components of damages, but did not come forward with any evidence to establish a <u>separate</u> category of "expenses," that was distinct in some way from the $95,502.94 in paid claims or the approximately $46,000 in claimed attorney's fees. In light of this omission, after the Court specifically raised the point in the May 10 Order and afforded GCNA an opportunity to supplement its damages submission to correct same, there will be no award of damages for an "expenses" category that in some way differs from the claims paid, or the attorney's fees incurred, by GCNA. Such a category of damages has not been proven by plaintiffs and would appear to constitute double-counting of damages already awarded.

accrued damages relating to a "lawsuit filed in the City of Fairhope under a maintenance bond issued on behalf of Gadcon in the penal sum amount of $545,671.20." (Doc. 19, ¶ 2.) In support of this statement, GCNA submits a copy of a complaint filed in Baldwin County Circuit Court on April 1, 2010, and styled *City of Fairhope v. The Guarantee Company of North America, USA, et al.*, Civil Action No. CV-2010-900566.00. (Drum Aff., Exh. 2.)[11]

To the extent that GCNA requests that the damages amount in the default judgment entered in this case be inflated to account for contingent liabilities that GCNA may sustain in the *City of Fairhope* litigation, the Court has already explained in Section II.A., why such an approach is improper. But there is another, more fundamental reason why *City of Fairhope* liabilities have no place in the default judgment entered here. From a fair reading of the Complaint filed in this action, Gadcon would not reasonably be on notice that GCNA was bringing this lawsuit to recover losses and expenses as to the Fairhope maintenance bond. Indeed, the Complaint discusses the Gulf Shores Softball Sportsplex project at length (even to the point of using a defined term, "the Project," for it). (Doc. 1, ¶¶ 4-7.) Amidst its discussion of the Sportsplex project, the Complaint proffers a single, stray reference to "a claim from the City of Fairhope with respect to a maintenance bond issued on a subdivision in an unspecified amount." (Doc. 1, ¶ 6.) The Complaint does not indicate that this maintenance bond was issued at Gadcon's request, that Gadcon was the principal, or that the maintenance bond was covered by, and subject to, the Agreement. On at least two occasions, this Court raised a query as to the relevance and propriety of this out-of-place City of Fairhope reference in a Complaint whose allegations centered on the Sportsplex project;[12] however, GCNA never acknowledged those

---

[11] The *City of Fairhope* complaint alleged that "GCNA issued a Maintenance Bond on the infrastructure of a subdivision developed in the planning jurisdiction of Fairhope," which bond "required GCNA to reimburse Fairhope for amounts incurred to repair failing infrastructure in the subdivision known as 'Old Battles Village.'" (Drum Aff., Exh. 2, ¶ 4.)

[12] In an Order entered on December 16, 2009, at the very inception of this case, the Court observed that "plaintiff has not explained what a claim on a different bond issued on a different project in a different municipality has to do with the performance and payment bonds issued by GCNA for the Gulf Shores Softball Sportsplex project. On its face, the Complaint is focused on that particular Gulf Shores project ..., so the relevance of a claim by the City of Fairhope on 'a maintenance bond issued on a subdivision' is unclear." (Doc. 3, at 2 n.2.) The

-10-

inquiries or sought to amend its Complaint to clarify its intentions and the scope of this litigation.

The law is clear that a plaintiff seeking a default judgment is confined to the specific factual allegations and demands delineated in the Complaint. A default judgment "does not give the plaintiff a blank check to recover from the defaulting defendant any losses it had ever suffered from whatever source." *Jackson v. Correctional Corporation of America*, 564 F. Supp.2d 22, 27 (D.D.C. 2008) (citations omitted). Rather, recovery is limited to the kind and amounts of losses set forth in the pleadings. The Federal Rules of Civil Procedure emphasize the point by stating that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Rule 54(c), Fed.R.Civ.P.[13] The case of *Silge v. Merz*, 510 F.3d 157 (2nd Cir. 2007), is instructive on this issue. In *Silge*, the plaintiff sought an award of pre-judgment interest from a defaulted defendant, but the complaint omitted reference to any such claim. After observing that the plaintiff's failure to articulate a demand for pre-judgment interest limited his damages under Rule 54(c), the appellate court explained that

> "This is a sensible rule. Because complaints can be long and intricate, a lawyer is often required to help a defendant gain a full understanding of the plaintiff's

---

Court made a similar comment in a separate Order entered on April 2, 2010. (Doc. 18, at 5 n.4.) For aught that the Complaint revealed, the mention of Fairhope may have been a typographical or drafting error, perhaps an inadvertent holdover from a form complaint. If the Court could not divine from the Complaint what nexus (if any) the City of Fairhope's purported claim might have to the particular bonds at issue in this lawsuit, and if plaintiff failed to clarify the matter via amendment of the pleadings or otherwise when the Court drew attention to it on multiple occasions, then how could Gadcon have reasonably understood this case to be about the Fairhope maintenance bond when it elected to default in this action?

[13] *See also WMS Gaming Inc. v. WPC Productions Ltd.*, 542 F.3d 601, 606 (7th Cir. 2008) ("because this was a default judgment, the usual rule that a party should be given the relief to which it is entitled whether or not it has requested that relief does not apply"); *Ward v. Real Ships, Inc.*, 2009 WL 3528365, *5 n.12 (S.D. Ala. Oct. 22, 2009) ("It is improper for a plaintiff to expand the tenor and scope of its factual allegations in ... default judgment proceedings."); *United States v. Giles*, 538 F. Supp.2d 990, 994 (W.D. Tex. 2008) ("the relief prayed for in a complaint defines the scope of relief available on default judgment"); *Capitol Records v. Carmichael*, 508 F. Supp.2d 1079, 1084 (S.D. Ala. 2007) (notwithstanding defendant's default, "judgment may be granted only for such relief as may lawfully be granted upon the well-pleaded facts alleged in the complaint") (citation omitted).

-11-

claims. By limiting damages to what is specified in the 'demand for judgment,' the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."

*Id.* at 160 (footnote omitted).

As stated, the Court is of the opinion that a defendant reviewing the Complaint would not reasonably be placed on notice of GCNA's intent to hold it accountable in this litigation for potentially hundreds of thousands of dollars of losses on a City of Fairhope maintenance bond, when there was but a single vanilla, nondescript, afterthought reference to that bond in a 10-page Complaint that otherwise focused exclusively on payment bonds issued in connection with the Sportsplex project. Under the circumstances, it would be unfair to allow plaintiff to parlay that passing mention of the City of Fairhope into a default judgment that may triple the damages otherwise available to GCNA under the Sportsplex bonds on which the factual allegations of the Complaint focused. For this reason, in addition to the fact that any losses or liabilities that GCNA may incur in connection with the *City of Fairhope* lawsuit are contingent, unpaid, uncertain, unaccrued and indeterminate at this time, the Court will not make allowance in the default judgment in this case for that category of losses or liabilities.[14]

## III. Conclusion.

For all of the foregoing reasons, plaintiff's Motion for Default Judgment (doc. 17) is **granted in part, and denied in part**. A default judgment will be entered in favor of plaintiff, Guarantee Company North America USA, and against defendant, Gadcon, Inc., in the total amount of **$134,438.36**, representing claims paid and attorney's fees incurred by GCNA by reason of executing bonds on Gadcon's behalf in connection with the Gulf Shores Softball

---

[14] Perhaps recognizing the tenuousness of its position, GCNA requests, in the alternative, that it be granted "leave of Court to amend the judgment in the event additional loss, cost, and expense is incurred" (doc. 19, at 2), either in the *City of Fairhope* litigation or on the Sportsplex project. Any request for amendment of the judgment will be governed by applicable legal standards set forth in the Federal Rules of Civil Procedure. This Court will not at this time enter an advisory opinion as to whether amendment may be permissible, much less a *carte blanche* directive purporting to suspend operation of the Rules to guarantee GCNA's ability to backtrack to amend the judgment upon request. Should GCNA seek amendment of the judgment at some point, it will be expected to buttress its position by citation to appropriate authorities.

Sportsplex project, as well as Gadcon's failure to perform as promised under the Agreement.[15]

A separate default judgment will enter.

DONE and ORDERED this 28th day of May, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[15] To the extent that GCNA is also requesting an indefinite extension of the preliminary injunction's prohibition on Gadcon's transfer or disposal of assets on a post-judgment basis, that request is **denied** for the reasons set forth in footnote 3 of the April 2 Order, which plaintiff has not addressed in its supplemental filings.